IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MARY TEAGUE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:18-CV-1098-RP |
| | § | |
| WILLIAMSON COUNTY, TRAVIS | § | |
| COUNTY, and CITY OF GIDDINGS, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court are three motions to dismiss Plaintiff Mary Teague's ("Teague") First

Amended Complaint, filed by each of the three Defendants in this case: Williamson County,

(Williamson County Mot. Dismiss, Dkt. 29), Travis County, (Travis County Mot. Dismiss, Dkt.

30), and the City of Giddings (Giddings Mot. Dismiss, Dkt. 28). Teague filed a response, (Pl.'s

Resp., Dkt. 34), and all three Defendants filed replies. (Replies, Dkt. 35, 36, 37). Teague then

filed a sur-reply, (Dkt. 41), and City of Giddings and Travis County filed sur-responses, (Sur-

Responses, Dkt. 50, 51). Approximately two months later, Teague filed a Partially Opposed

Supplemental Motion to Amend Complaint, (Dkt. 57), and a Partially Opposed Motion for

Leave to File a Partially Opposed First Supplemental Motion to Amend, (Dkt. 58). Having

considered the parties' briefs, the record, and the relevant law, the Court will grant Travis County

and City of Giddings's motions to dismiss, grant Williamson County's motion to dismiss in part,

and deny Teague's motions to amend.

**I. BACKGROUND**

Teague is a thirty-year-old woman who worked as a deputy for the Williamson County

Sheriff's Office ("Williamson County") from January 2011 until her honorable discharge in

November 2013. (Am. Compl., Dkt. 21, at 4). Teague then applied to work for Travis County

Constable Precinct Two ("Travis County") and later the City of Giddings Police Department,

1

("Giddings"), but neither department selected her for employment. (*Id.* at 13). Teague pleads the following facts about her employment experience with Williamson County and her application process with Travis County and Giddings.

### A. Teague's Employment with Williamson County

While employed by Williamson County, Teague received no reprimands and never participated in any disciplinary proceedings. (*Id.* at 9). During the first phase of her field training program, Teague "engaged in a romantic relationship" with her Field Training Officer, Deputy Silguero ("Silguero"). (*Id.* at 4). Teague contends that Silguero was "controlling and violently abusive" throughout their relationship, and she suffered "considerable distress" as a result. (*Id.* at 5). She began seeing a therapist and taking prescribed medication for anxiety and depression. (*Id.*).

In November 2012, Williamson County's Internal Affairs Department contacted Teague in relation to an ongoing sexual harassment investigation involving Silguero. (*Id.*). Teague participated in the investigation as a witness. (*Id.*). During the investigation, Teague learned that Silguero had sent "sexually suggestive text messages to another female trainee under his supervision." (*Id.*). Distressed, Teague attempted to contact Silguero, but he would not respond to her calls. (*Id.*). She decided to go to Silguero's home, where she learned that he was married with two children. (*Id.*). Around this time, Teague suffered two mental breakdowns. (*Id.*). Teague attributes these breakdowns to Silguero's "physical abuse, sexual abuse, deception, and manipulation." (*Id.*).

At some point during the investigation into Silguero's conduct, Sheriff Wilson[1] directed Williamson County to classify Teague as a "victim" and ordered that "information relating to her victimhood" be removed from her personnel file. (*Id.*). In December 2012, Williamson County placed Teague on administrative leave and ordered her to submit to a psychological evaluation.

---

[1] Teague does not provide Sheriff Wilson's first name. (*See generally* Am. Compl., Dkt. 21).

(*Id.*). After her evaluation, Teague was placed on light duty. (*Id.* at 6). Williamson County terminated Silguero's employment in January 2013. (*Id.*). Approximately three months later, Williamson County ordered Teague to submit to a second psychological evaluation. (*Id.*). While Teague returned to duty after this evaluation, she had to repeat her field training. (*Id.*).

After Teague successfully passed the first and second phases (about half) of her field training, she was placed under Deputy Alafa's[2] ("Alafa") supervision. (*Id.*). Alafa served as Teague's field training officer for one month. (*Id.*). During this time, Alafa made "numerous sexually suggestive remarks" to Teague. (*Id.*). On one occasion, Alafa mimed masturbation and played and sang along to an offensive song with "lewd and lascivious" lyrics while driving with Teague in a patrol car. (*Id.* at 7).

Teague filed a sexual harassment complaint against Deputy Alafa with Captain Mike Gleason on July 9, 2013. (*Id.*). After Teague filed her complaint, Williamson County placed her with a different field training officer under whose supervision she successfully completed the third phase of the field training program. (*Id.*).

Just before Teague began the fourth and final phase of the field training program, Williamson County placed her on administrative leave and ordered her to submit to a third psychological evaluation. (*Id.* at 8). Dr. Brandy Miller ("Miller") conducted this third psychological evaluation and determined that Teague was not fit for unrestricted duty. (*Id.*). Miller included a background section in her report, which detailed the abuse Teague endured from Silguero and the emotional harm it caused her. (*Id.*). Even though this report contained "highly sensitive victim/health information," and contrary to Sheriff's Wilson's orders, this report became a part of Teague's personnel file. (*Id.* at 5, 8).

Teague remained on administrative leave for approximately three months until Williamson County honorably discharged her in November 2013. (*Id.* at 8).

---

[2] Teague does not provide Deputy Alafa's first name. (*See generally* Am. Compl., Dkt. 21).

Teague pleads no facts pertaining to her employment, mental state, or conduct for the next fifteen months. (*See id.* at 9). In February 2015, Teague notes that she sought therapy from Dr. Thomas Kim ("Kim"). (*Id.*). By February 2017, Kim determined that Teague had "shown an absence of symptoms and resolved her past difficulties" and "presented no notable risk for performing law enforcement duties." (*Id.*).

### B. Teague Applies to Work for Travis County

In February 2017, over three years after her honorable discharge from Williamson County, Teague applied to work at Travis County. (*Id.*). Teague had worked at Travis County prior to her time at the Williamson County Sheriff's Office and had likewise received an honorable discharge. (*Id.* at 9). As part of Travis County's application process, Corporal Sergio Flores ("Flores") conducted a background investigation and contacted Teague's previous employer, Williamson County. (*Id.*). During the reference check, Williamson County employees "made numerous false and misleading statements" about Teague to Flores "for the purpose of denying her employment" with Travis County. (*Id.* at 10).

Based on these misleading statements, Flores made inaccurate findings in his report, including that Teague "was deceptive in failing to disclose she had been counseled for tasing a handcuffed subject;" "was deceptive in failing to disclose that she was removed from duty as a Deputy Sheriff after failing to pass three separate mental fitness for duty evaluations"; that her "peace officer status was revoked or removed"; that she "resigned from her employment" with Williamson County; and that she was "insubordinate." (*Id.* at 10–11). Teague's personnel file contradicts these findings. (*Id.*). Specifically, Teague's file contains no disciplinary history, notes that she only failed two mental fitness evaluations, and explains that she was honorably discharged. (*Id.*). Moreover, Williamson County never revoked her peace officer status. (*Id.* at 11).

Teague contends Flores also interjected his own false and misleading facts into the report, including that she failed to disclose her involvement with the internal affairs investigation

at Williamson County; failed to disclose that she was convicted of a Class C misdemeanor for speeding in January 2016; and failed to disclose that she was convicted of a Class C misdemeanor in April 2007. (*Id.* at 11–12). According to Teague, her application questionnaire did not prompt her to disclose her two misdemeanor convictions or her involvement in an internal affairs investigation. (*Id.* at 11). However, she did disclose the harassment she endured from her field training officers. (*Id.* at 11). She further notes that she disclosed her speeding misdemeanor in her personal history statement and left out her 2007 misdemeanor conviction because the personal history question only asked for "traffic citations in the last seven years." (*Id.* at 12).

During Teague's background check, Williamson County also provided Flores with "private victim information" regarding the alleged harassment from Silguero that Teague endured in the form of a copy of Miller's "L-3 report,"[3] which allegedly detailed the entire incident. (*Id.* at 12). Based on Miller's L-3 report and discussions Flores had with a sergeant in Williamson County's internal affairs division, Teague contends Flores knew Teague's field training officers had sexually harassed her. (*Id.* at 12). Flores's report devoted almost an entire page to discussing Teague's "first protected activity involving Deputy Silguero." (*Id.* at 13).

While Flores initially determined that Teague needed a new L-3 evaluation to assess her fitness for employment with Travis County, he ultimately decided not to order one. (*Id.* at 13). As noted in his report, he reached this determination "after being made aware of the above-mentioned actions by Teague and prior performance for duty evaluations." (*Id.*). Moreover, after speaking with Miller and other doctors recommended by Miller, he reported that "[a]ll of the doctors that I have spoken with feel that there is no need to perform the L-3." (*Id.*).

Flores completed Teague's background check on February 16, 2017, and recommended that Teague "be removed from the application process and she not be allowed to reapply." (*Id.*).

---

[3] Before a law enforcement agency may appoint a person as a police officer, it must obtain an L-3 evaluation, which assesses the candidate's psychological and mental health. *See* 37 Tex. Admin. Code § 217.7(a)(9)(A)(i).

Flores based this recommendation on Teague's "[h]istory with the Williamson County Sheriff's office" and the evaluations that described her personality as "deceptive." (*Id.* at 12).

### C. Teague Applies to Work at Giddings Police Department

Later that same year, in October 2017, Teague applied for a police officer position with Giddings. (*Id.* at 14). Giddings gave Teague a provisional offer of employment, contingent upon her successful completion of a background check. (*Id.*). Giddings hired third-party David Outon ("Outon") to conduct Teague's background investigation. (*Id.* at 14). Outon compiled a report synthesizing the investigation's results . (*Id.*). During his investigation, Outon contacted Williamson County, reviewed her employment file, and learned about Teague's two prior protected activities. (*Id.*). In reviewing Teague's Williamson County employment file, he noted that Teague had received one commendation regarding a call for service and that she had no performance evaluations. (*Id.*). His report does not reference any specific disciplinary history. (*Id.* at 14). Because Teague's L-3 evaluation by Dr. Miller was included in Teague's Williamson County personnel file, Outron's report also notes Miller's L-3 evaluation. (*Id.* at 15). Outron also contacted Travis County and reviewed Teague's file, including Flores's report. (*Id.*).

Giddings withdrew its provisional offer of employment on October 31, 2017, and canceled the L-3 examination scheduled for the following day. (*Id.* at 15). Teague alleges that Giddings stated—although she does not indicate when or in what capacity—that she had "lied on her pre-employment psychological evaluation by failing to disclose a history of sexual abuse, PTSD, and that she was taking the medications Cymbalta and Lamictal." (*Id.* at 15–16).

### D. Summary of Teague's Claims

Teague now contends that Williamson County released her private victim information and made false and misleading statements to Travis County and Giddings to deny her future employment opportunities in retaliation for her participation in two protected activities. (*Id.* at 17). She alleges that these false and misleading statements "became a permanent part" of her employment record and "directly resulted" in her non-selection for the position of Deputy

Constable with Travis County and the withdrawal of her provisional employment offer from Giddings. (*Id.*). She further contends that Travis County and Giddings "failed to conduct an adequate investigation to determine whether the false and misleading statements" about her were true and "wrongfully concluded that [she] was, essentially, unfit for duty without conducting any L-3 evaluation." (*Id.* at 17–18).

Teague brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112, and the Texas Labor Code § 21.051(1) against Williamson County, Travis County, and Giddings. (*Id.* at 1). All three defendants filed motions to dismiss these claims under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 28, 29, 30).

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338.

### III. DISCUSSION

Teague brings federal and state sex discrimination, disability discrimination, and retaliation claims against Williamson County, Travis County, and Giddings. The Court will consider each of these claims in turn.

### A. Sex Discrimination

Teague alleges that Williamson County, Travis County, and Giddings discriminated against her on the basis of sex in violation of Title VII, 42 U.S.C. § 2000e, et seq., and the Texas Labor Code § 21.051.[4] (Williamson County Mot. Dismiss, Dkt. 29, at 2).

In order to survive a motion to dismiss in this context, "a plaintiff need not make out a prima facie case of discrimination under *McDonnell Douglas*."[5] *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir.

---

[4] Sex discrimination claims brought under both the Title VII and the Texas Labor Code are evaluated using the same analytical framework. *Allen v. Radio One of Tex. II, L.L.C.*, 515 F. App'x 295, 297 (5th Cir. 2013) ("Because TCHRA is intended to correlate with Title VII, the same analysis is applied for each claim."); *Shackelford v. Deloitte & Touche, L.L.P.*, 190 F.3d 398, 404 n.2 (5th Cir. 1999) ("[T]he law governing claims under the TCHRA and Title VII is identical."). Thus, the Court's discussion of Teague's Title VII claims that follows applies equally to Teague's Texas Labor Code claims.

[5] Under the *McDonnell Douglas* framework, Teague will ultimately have to show that: (1) she is a member of a protected class; (2) she was qualified and applied for the job; (3) the employer rejected her for the job despite her qualifications; and (4) a similarly situated applicant outside the protected class was hired. *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).

2013)). But a plaintiff must "plead sufficient facts on all of the *ultimate elements* of a disparate treatment claim to make their case plausible." *Id.* (quoting *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016). "[T]here are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff *because of* her protected status." *Id.* at 767. To establish these elements, plaintiff must allege sufficient facts to "nudge [her] claims across the line from conceivable to plausible." *Id.* (quoting *Twombly*, 550 U.S. at 547).

When a plaintiff's disparate treatment claim "depends on circumstantial evidence, [she] will ultimately have to show that [she] can satisfy the *McDonnell Douglas* framework." *Id.* Accordingly, "it can be helpful to reference that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim." *Id.* But the Fifth Circuit has stressed that the district court "inappropriately heightens the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss." *Id.* At the motion to dismiss phase, the plaintiff "need only plausibly allege facts going to the ultimate elements of the claim." *Id.* The Court analyzes Teague's sex discrimination claims against the three Defendants with this pleading standard in mind.

### 1. Williamson County

Teague alleges Williamson County discriminated against her on the basis of sex when it made false and misleading statements to Travis County and Giddings during her background check and represented to these two prospective employers that she was "perceived as a 'flirt.'" (Am. Compl., Dkt. 21, at 11, 18).

Williamson County contends that Teague's sex discrimination claim is time-barred because she did not file a charge of sex discrimination with the Equal Employment Opportunity

Commission ("EEOC") within 300 days[6] of her November 1, 2013, honorable discharge. (*Id.* at 4). According to Williamson County, Teague did not file her sex discrimination claim with the EEOC until February 20, 2018, more than four years after Williamson County honorably discharged her. (*Id.*).

A plaintiff is required to file a Title VII discrimination claim with the EEOC within 300 days of the challenged discrimination. 42 U.S.C. § 2000e-5(e)(1); *see also Frank v. Xerox, Inc.*, 347 F.3d 130, 136 (5th Cir. 2003). Any claim for sex discrimination filed after the 300 days is thus time-barred. "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

Teague concedes that she did not file an EEOC complaint within 300 days of November 1, 2013, the date Williamson County honorably discharged her. (Pl.'s Resp., Dkt. 34, at 6). Nevertheless, she contends her sex discrimination claims are not time-barred because her claim arises from post-employment false and misleading statements made by Williamson County to Travis County in February 2017 and to Giddings in October 2017 that "were made for the specific purpose to deny her employment with Travis County and Giddings because of her gender." (*Id.*).

Teague applied to work for Travis County in February 2017 and Flores completed his background investigation on February 16, 2017. (Am. Compl., Dkt. 21, at 9–11). She filed her charge of discrimination with the EEOC on February 20, 2018. (Williamson County Mot. Dismiss, Dkt. 29, at 4). Any sex discrimination claims arising from alleged discriminatory acts taken by Williamson County while Teague's application was pending in Travis County occurred more than 300 days before she filed her EEOC charge and are therefore time-barred. *See* 42

---

[6] "A plaintiff may bring a claim for discrimination under Title VII only if she has filed a claim with the EEOC within 180 days of the alleged unlawful act, or within 300 days if the plaintiff first filed a complaint with a state or local agency." *Ikossi-Anastasiou v. Bd. of Supervisors of Louisiana State Univ.*, 579 F.3d 546, 549 (5th Cir. 2009). Both Teague and Williamson County agree that 300 days is the relevant time frame here. (Williamson County, Mot. Dismiss, Dkt. 29, at 4; Pl.'s Resp., Dkt. 34, at 6).

U.S.C. § 2000e-5. Teague's sex discrimination claims against Giddings, however, are not time-barred, as Williamson County allegedly discriminated against Teague during Giddings's background investigation, which occurred in October 2017—well within 300 days of February 20, 2018, when she filed her EEOC charge. Accordingly, the Court's analysis of Teague's sex discrimination claims against Williamson County is confined to allegations of post-employment statements made by Williamson County to Giddings during the application process.[7]

Even accepting as true Teague's assertion that Williamson County made false and misleading statements to Giddings in 2017 "for the specific purpose" of denying her employment, this allegation is insufficient to state a plausible claim for sex discrimination under Title VII. *See Iqbal*, 556 U.S. at 678. While Teague does not have to submit evidence to establish a prima facie case of sex discrimination at this stage, she does have to plead sufficient facts about the ultimate elements of a disparate treatment claim to make her case plausible. That is, Teague must plead facts showing that Williamson County took an adverse employment action against her because of her sex. *Chhim*, 836 F.3d at 470. But she pleads no facts to show that Williamson County made false and misleading statements to Giddings because of her sex. Instead, Teague contends that Williamson County made these statements "in retaliation for her protected activities at [Williamson County]," conflating her sex discrimination and retaliation claims. (*See* Am. Compl., Dkt. 21, at 17; *see also* Pl.'s Resp., Dkt. 34, at 6 ("Teague believes that these statements were made for the specific purpose to deny her employment with Travis County and Giddings because of her gender and protected status after filing several complaints with internal affairs . . . against her Field Training Officer ("FTO") supervisors, Deputy Silguero and Deputy Alafa.")).

---

[7] Accordingly, the Court's analysis of Teague's sex discrimination claims will not rely on facts related to the alleged sexual harassment Teague endured from Silguero and Alafa, as Teague concedes a claim premised on such facts is time-barred. (*See* Resp., Dkt. 34, at 6 ("Teague does not complain about her honorable discharge or any act or omission of Williamson County while she was employed at Williamson County.")).

The only other post-employment fact Teague alleges in support of her sex discrimination claims is that Williamson County represented to Giddings that "Teague was perceived by WCSO as a 'flirt.'"[8] (Pl.'s Resp., Dkt. 34, at 7). "Title VII forbids actions taken on the basis of sex that 'discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment.'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (quoting 42 U.S.C. § 2000e-2(a)(1)). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Teague pleads no facts to contextualize this alleged statement as anything more than an isolated comment. And even if she could do so, she has not shown that Williamson County discriminated against her with respect to her "compensation, terms, conditions, or privileges of employment." *Id.* Concluding that referring to Teague as a flirt is "sexually discriminatory," without more, is insufficient to show Williamson County discriminated against her on the basis of sex. (Pl.'s Resp., Dkt. 34, at 7). Thus, the Court will grant Williamson County's motion to dismiss Teague's sex discrimination claims.

## 2. Travis County

Teague also brings state and federal sex discrimination claims against Travis County. (Am. Compl., Dkt. 21, at 18). Teague alleges Travis County did not hire her because of her sex and points to Travis County's reliance on Williamson County's false representations, its interjection of its own misleading facts, and its decision not to order a new L-3 evaluation as evidence of discriminatory intent. (Pl.'s Resp. Dkt. 34, at 13).

Travis County moves to dismiss Teague's sex discrimination claims for two reasons. First Travis County contends that Teague's federal and state sex discrimination claims should be

---

[8] It is initially unclear from Teague's amended complaint whether Williamson County also represented to Giddings that Teague "was perceived as a 'flirt,'" but she clarifies in her response, that Williamson County made this representation to both prospective employers. (*Compare* Am. Compl., Dkt. 21, at 11 *with* Pl.'s Resp., Dkt. 34, at 7).

dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction because she did not include a charge of sex-based discrimination in her filing with the EEOC. (Travis County Mot. Dismiss, Dkt. 30, at 14). According to Travis County, Teague's failure to include a claim for sex discrimination in her EEOC charge constitutes a failure to exhaust administrative remedies, which "deprives this court of jurisdiction" and necessitates dismissal of her sex discrimination claim under Rule 12(b)(1). (*Id.*). Second, while Travis County concedes, for the purposes of this motion, that Teague has shown she suffered an adverse employment action when Travis County did not hire her, it contends Teague has not sufficiently alleged Travis County failed to hire her because of her sex. (Travis County Mot. Dismiss, Dkt. 30, at 6); *see also Cicalese*, 924 F.3d at 767 (enumerating the ultimate elements of a disparate treatment claim).

    As a preliminary matter, the Court notes that Travis County has improperly moved for dismissal of Teague's sex discrimination claims under Rule 12(b)(1) for her alleged failure to exhaust administrative remedies. (Travis County Mot. Dismiss, Dkt. 30, at 14). Title VII's charge-filing requirement is a mandatory "processing rule," but is "not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1851 (2019). Thus, failure to timely file a charge with the EEOC does not deprive a court of subject-matter jurisdiction. *Id.* at 1846 ("We hold that Title VII's charge-filing instruction is not jurisdictional"). Accordingly, the proper mechanism for dismissal of a Title VII claim for failure to exhaust administrative remedies is Federal Rule of Civil Procedure 12(b)(6), not 12(b)(1). *See id.* at 698 n.2.

    While not a jurisdictional requirement, administrative exhaustion is still a precondition to filing suit under Title VII. So, the Court must determine whether Teague's EEOC charge, "construed with the utmost liberality," contains sufficient facts to properly put Travis County on notice of Teague's sex discrimination charge. *Preston v. Texas Dep't of Family & Protective Servs.*, 222

F. App'x 353, 356–57 (5th Cir. 2007). If not, Travis County is entitled to dismissal of Teague's

sex discrimination claim under Rule 12(b)(6).

### a. Failure to Exhaust Administrative Remedies

Before seeking judicial relief on a Title VII claim, a plaintiff must exhaust her

administrative remedies by filing a charge of discrimination with the EEOC. *Davis v. Fort Bend*

*Cty.*, 893 F.3d 300, 303 (5th Cir. 2018), *aff'd sub nom. Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843

(2019); 42 U.S.C. § 2000e-5(e)(1). "[A] charge is sufficient when the [EEOC] receives from the

person making the charge a written statement sufficiently precise to identify the parties, and to

describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b); *see also Kabir v.*

*Singing River Health Sys.*, No. 1:19CV412-LG-RHW, 2019 WL 6702433, at *2 (S.D. Miss. Dec. 9,

2019). In assessing the sufficiency of a charge, the Fifth Circuit has noted two dueling principles:

"(1) [c]onsistent with the remedial purposes underlying Title VII, we construe employment

discrimination charges with the utmost liberality, bearing in mind that such charges are generally

prepared by laymen untutored in the rules of pleading, and (2) the charge must contain an

adequate factual basis so that it puts the employer on notice of the existence and nature of the

charges and so the EEOC may have an opportunity to attempt to obtain voluntary compliance."

*Preston*, 222 F. App'x at 356–57. In balancing these considerations, the Fifth Circuit allows Title

VII suits "based, not only upon the specific complaints made by the employee's initial EEOC

charge, but also upon any kind of discrimination like or related to the charge's allegations, limited

only by the scope of the EEOC investigation that could reasonably be expected to grow out of

the initial charges of discrimination." *Id.* at 357.

When Teague filed her EEOC charge, she checked the boxes next to "retaliation" and

"disability," indicating that she intended to pursue retaliation and disability claims against Travis

County. (EEOC Charge, Dkt. 30-1, at 1). She did not check the box marked "sex." (*See id.*).

Regardless, Teague's EEOC charge does include the following allegation:

> [T]he Sergeant representing the Williamson County Sheriff's Office referred to
> me as a "flirt" in official correspondence with the Travis County Pct. 2
> Constable's Office, and in documentation related to the Giddings Police
> Department background investigator. I find such a statement to be
> discriminatory as a female and completely biased.

(EEOC Charge, Dkt. 30-1, at 2; Pl.'s Resp., Dkt. 34, at 12).

Liberally construed, and "bearing in mind that such charges are generally prepared by

laymen untutored in the rules of pleading," Teague's charge contained sufficient facts to put

Travis County on notice to investigate possible discrimination based on sex. *See Preston*, 222 F.

App'x at 356–57. Accordingly, dismissal for failure to exhaust is inappropriate.

### b. Causation

Travis County also contends Teague's sex discrimination claims should be dismissed

because she has not sufficiently pleaded causation; that is, Travis County contends Teague has

not sufficiently pleaded that Travis County failed to hire her because of her sex. (Travis County

Mot. Dismiss, Dkt. 30, at 6); *see also Cicalese*, 924 F.3d at 767 (enumerating the elements of a

disparate treatment claim). The Court agrees. At most, Teague alleges that Travis County based

its hiring decision on incorrect information and a cursory review of Teague's application

materials. (*See id.* at 9–13). But to successfully plead a claim for sex discrimination, Teague must

allege facts to show Travis County did not hire her *because of* her sex. *Cicalese*, 924 F.3d at 767.

While it may have been prudent for Travis County to compare Williamson County's statements

with Teague's personnel file, "[m]anagement does not have to make proper decisions, only non-

discriminatory ones." *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005).

"[E]vidence that the employer's investigation merely came to an incorrect conclusion does not

establish a [discriminatory] motivation behind an adverse employment decision."*Allbritain v.*

*Texas Dep't of Ins.*, No. A-12-CA-431-SS, 2014 WL 272223, at *5 (W.D. Tex. Jan. 23, 2014).

Allegations of Travis County's reliance on Williamson County's misrepresentations, its inaccurate

findings based on those misrepresentations, and its decision not to order an L-3 evaluation—

without more—do not allow the Court to reasonably infer that Travis County's decision not to hire Teague was motivated by discriminatory animus.

The only other fact Teague provides in support of her sex discrimination claims against Travis County is that Williamson County "represented to Travis County . . . that Teague was perceived by [Williamson County] as a 'flirt'" (Pl.'s Resp., Dkt. 34, at 7). While Teague insists this "implicate[s] gender,"[9] it does not show Travis County did not hire her *because of* her sex. *Cicalese*, 924 F.3d at 767. Because Teague has failed to allege any facts showing Travis County denied her employment on account of her sex, the Court will dismiss Teague's sex discrimination claims against Travis County.

### 3. City of Giddings

Teague's sex discrimination claims against Giddings fail for similar reasons. Like Teague's allegations against Travis County, Teague pleads no facts to establish that Giddings did not hire her because of her sex. Instead, Teague again hinges her sex discrimination claims on Giddings's alleged inadequate background investigation. (*See* Am. Compl., Dkt. 21, at 14–17). Specifically, Teague alleges Giddings should have verified Williamson County's statements about her disciplinary history. (*Id.*). Because it did not, she argues, it reached incorrect conclusions based on Williamson County's misrepresentations, including that she was insubordinate, unstable, deceptive, and unable to complete the job successfully, and did not order a new L-3 psychological evaluation. (*Id.*). While Teague concludes these facts show Giddings did not hire her because of her sex, the Court concludes that without more, these facts at most show that Giddings did not conduct a thorough investigation into Teague's background before deciding not to hire her. They do not—as required to state a claim for sex discrimination—allow the Court to reasonably infer that Giddings withdrew its provisional employment offer because of her sex. *See Cicalese*, 924 F.3d at 767; *Iqbal*, 556 U.S. at 686 (establishing that a claim has facial

---

[9] The Court notes that the term "flirt" is equally applicable to men and women.

plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). As a result, the Court will dismiss Teague's federal and state sex discrimination claims against Giddings.

### B. Disability Discrimination

Teague also brings claims for disability discrimination against all three Defendants under the ADA and the Texas Labor Code.[10] (Am. Compl., Dkt. 21, at 18). With respect to Williamson County, Teague alleges that her supervisors "did not attempt to accommodate [her] perceived disability" by "placing her on light duty for a period of time to allow her to recover from the emotional harm instead of administrative leave." (Am. Compl., Dkt. 21, at 9). As for Travis County and Giddings, Teague alleges that Travis County and Giddings "had knowledge of a known disability suffered by [Teague] in the past, but failed to conduct a L-3 examination which would have cleared [her] of any further disability and allowed her to be employed by [Travis County and Giddings]." (*Id.* at 18). Teague further alleges that Giddings's background report demonstrates that it discriminated against her "on the basis of a perceived disability," an allegation she bolsters by citing to Giddings' statement that she "lied on her pre-employment psychological evaluation by failing to disclose a history of sexual abuse, PTSD, and that she was taking the medications Cymbalta and Lamictal." (*Id.* at 15–16).

"The ADA prohibits employers from discriminating against an employee on the basis of a disability as defined by the Act." *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 764 (5th Cir. 2016) (citing 42 U.S.C. § 12112). To prevail on a disability discrimination claim under the ADA, a plaintiff must show that "(1) he has a disability; (2) he is qualified for the job; and (3) the covered entity made its adverse employment decision because of the party's disability." *Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013) (cleaned up).

---

[10] "A disability discrimination claim under the Texas statute maps onto federal disability discrimination law, and courts 'appl[y] the legal standards for the ADA' to such claims." *Clark v. Charter Commc'ns, L.L.C.*, 775 F. App'x 764, 767 (5th Cir. 2019) (quoting *Gober v. Frankel Family Trust*, 537 F. App'x 518, 520 (5th Cir. 2013)).

Teague has not pleaded sufficient facts to state a claim for disability discrimination against any of the three Defendants. First, any disability discrimination premised on the allegation that Williamson County "honorably discharged" Teague because of her disability is time-barred. The ADA incorporates by reference procedures applicable to actions under Title VII, 42 U.S.C. § 2000e, *et seq.*, including its requirement that an aggrieved party who institutes proceedings with a state or local agency file an appropriate charge "within three hundred days after the alleged unlawful employment practice occured." *See* 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5); *Lee v. Columbia/HCA of New Orleans, Inc.*, 611 F. App'x 810, 811 (5th Cir. 2015). Teague filed her EEOC charge on February 20, 2018, more than four years after she stopped working for Williamson County.[11] Thus, the Court will grant Williamson County's motion to dismiss Teague's federal and state disability discrimination claims as time-barred.

Second, Teague fails to allege facts that allow the Court to reasonably infer Travis County or Giddings declined to hire her because of an actual or perceived disability. *See Neely*, 735 F.3d at 245. Teague's allegation that a newer L-3 examination "would have cleared [her] of any further disability" does not show that Travis County or Giddings denied her a position because of her disability. (Am. Compl., Dkt. 21, at 18). And while Giddings's finding that Teague "lied on her pre-employment psychological evaluation" by failing to disclose her psychological history allows for an inference that Giddings declined to hire her—at least partially—because she *lied* about her psychological condition; it does not support an inference that Giddings declined to hire her because she *had* a psychological condition. (*Id.*). Because Teague has failed to sufficiently allege facts showing either Travis County or Giddings declined to hire her because of an actual or perceived disability, Teague has failed to plausibly plead a disability discrimination claim. *Cicalese*, 924 F.3d 762 at 768 (holding that at the motion to dismiss stage, plaintiff must plausibly

---

[11] To the extent Teague pleads a failure-to-accommodate claim rather than a disability discrimination claim, that claim is likewise time-barred. *See* 42 U.S.C. § 12117(a) (incorporating Title VII's timeliness requirements under 42 U.S.C. § 2000e-5 into the ADA).

allege facts going to the ultimate elements of the claim to survive a motion to dismiss); *Neely*, 735 F.3d at 245 (in a disability discrimination case, a plaintiff must show the covered entity made its adverse employment decision because of the party's disability). Accordingly, the Court will grant Travis County and Giddings's motions to dismiss Teague's federal and state-law disability discrimination claims.

### C. Retaliation

Teague also alleges that Williamson County, Travis County, and Giddings violated Title VII of the Civil Rights Act and Chapter 21 of the Texas Labor Code by retaliating against her for participating in an internal affairs investigation while employed by Williamson County.[12] (Am. Compl., Dkt. 21, at 18). To state a retaliation claim, Teague must allege facts that tend to establish that: "(1) she engaged in an activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action." *Richards v. JRK Prop. Holdings*, 405 F. App'x 829, 831 (5th Cir. 2010). Though a plaintiff is not required to plead a prima facie case of retaliation at the motion to dismiss stage, she must "'plead sufficient facts on all of the ultimate elements'" of a retaliation claim to make her case plausible. *Jenkins v. Louisiana Workforce Comm'n*, 713 F. App'x 242, 244–245 (5th Cir. 2017) (quoting *Chhim*, 836 F.3d at 470).

At this stage, the parties do not dispute that Teague has sufficiently alleged a protected activity: she participated as a witness in an internal affairs investigation into sexual harassment allegations against Silguero and filed a sexual harassment complaint against Alafa while employed by Williamson County. (Am. Compl., Dkt. 21, at 5, 7); *see Jenkins*, 713 F. App'x at 245 (quoting 42 U.S.C. § 2000e-3) ("An employee has engaged in activity protected by Title VII if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2)

---

[12] Because "the substantive law governing Title VII and TCHRA retaliation claims is identical," the analysis that follows applies to both claims. *Gorman v. Verizon Wireless Texas, L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014).

'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII."). But Defendants do dispute whether Teague has plausibly pleaded a causal nexus between a protected activity and an adverse employment action. (Williamson County Mot. Dismiss, Dkt. 29, at 5–7; Travis County Mot. Dismiss, Dkt. 30, at 9; Giddings Mot. Dismiss, Dkt. 28, at 5–6). The Court will address each Defendant's arguments with respect to causation in turn.

### 1. Williamson County

Teague alleges that Williamson County retaliated against her by making "numerous false and misleading statements" about her employment history and sharing "private victim information" related to the harassment she endured from Silguero with Travis County's background investigator, Flores, for the purpose of denying her future employment with Travis County. (Am. Compl., Dkt. 21, at 9–10).

Williamson County argues that Teague's retaliation claims should be dismissed because she does not plead facts showing a causal connection between any alleged protected activity in which she engaged during her employment by Williamson County and an adverse employment action. (Williamson County Mot. Dismiss, Dkt. 29, at 5). Specifically, Williamson County argues that Teague does not allege a connection between the protected activity related to Silguero and Alafa and Travis County and Giddings's decision not to hire her. (*Id.* at 6).

In assessing whether Teague has sufficiently pleaded causation, the Court must first determine the relevant causal nexus. A review of Teague's amended complaint reveals that she pleads a causal connection between her participation in protected activity and two distinct adverse employment actions. (*Compare* Am. Compl., Dkt. 21, at 17, *with id.* at 19). Teague first alleges that "false and misleading statements by [Williamson County] employees, as well as the release of private victim and/or health information, were made in retaliation for her protected activities at [Williamson County]." (*Id.* at 17). Later, Teague alleges a causal connection between the protected activity and Travis County and Giddings's decisions not to hire her. (*Id.* at 19

("Causation can be shown in this case between the protected activity and the adverse employment action (the denial by [Travis County and Giddings]) due to the existence of the 'code of silence'" among law enforcement officers.")).

Thus, Teague hinges her retaliation claims against Williamson County on two causal connections: (1) a causal connection between the protected activity and Williamson County's negative employment reference, and (2) a causal connection between the protected activity and Travis County and Giddings's decisions not to hire her. (*Id.* at 17, 19). Because the Court finds that Teague has stated a claim for retaliation against Williamson County on the basis of the first alleged causal nexus, the Court need not address Teague's second permutation.[13]

### a. Williamson County's Retaliatory Statements

Teague alleges that Williamson County retaliated against her for participating in two internal affairs investigations by making false statements and releasing private victim information to her prospective employers during a background check for the purpose of sabotaging her employment prospects with Travis County and Giddings. (Am. Compl. Dkt. 21, at 9–10; 17). The first question the Court must answer then is whether making false statements and releasing private victim information to a prospective employer constitutes an adverse employment action.

---

[13] Williamson County's motion to dismiss presumes that the only adverse employment action pleaded by Teague is her prospective employer's decision not to hire her. (Williamson County Mot. Dismiss, Dkt. 29, at 7 ("Here, the time gap between any alleged protected activity she engaged in during her time at [Williamson County] and any adverse employment action by [Travis County] and [Giddings] is over three (3) years.")). Had Teague not pleaded an additional adverse employment action *taken by Williamson County*, the Court would question whether Teague could state a retaliation claim against Williamson County on the basis of an adverse employment action taken by a different employer, even under a cat's paw theory. The Court is unaware of any authority applying a cat's paw theory of liability to hold a former employer liable for an adverse employment action taken by a prospective employer. *See Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 758 (5th Cir. 2017), *as revised* (Mar. 30, 2017) (noting that "a Title VII retaliation plaintiff is entitled to use the cat's paw theory of liability if he can demonstrate that a person with a retaliatory motive used the decisionmaker to bring the intended retaliatory action," but confining the inquiry to actors working for the same employer); *see also Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011) (applying general principles of tort and agency law and explaining that "[a]nimus and responsibility for the adverse action can both be attributed to the earlier agent . . . if the adverse action is the intended consequence of that agent's discriminatory conduct" ; "The employer is at fault because one of its agents committed an action based on discriminatory animus that was intended to cause, and did in fact cause, an adverse employment decision"); *Gorman v. Verizon Wireless Texas, L.L.C.*, 753 F.3d 165, 171 (5th Cir. 2014) (noting in a case involving a state-law retaliation claim that the "earlier agent" with the retaliatory animus may be a coworker, rather than a supervisor, though all relevant actors worked for the same employer).

b. Adverse Employment Action

In assessing whether a plaintiff's employer took an adverse employment action against her, "[t]he key question is whether the challenged action is 'materially adverse' in that it is 'harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015) (quoting *Burlington Northern. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *see also Donaldson v. CDB Inc.*, 335 F. App'x 494, 506 (5th Cir. 2009) (recognizing that *Burlington Northern* "abrogated [the Fifth Circuit's] previous approach, which required showing an 'ultimate employment decision' such as 'hiring, granting leave, discharging, promoting, and compensating' to establish a prima facie retaliation claim"). Thus, an adverse employment action in the retaliation context is not limited to "ultimate employment decisions" like hiring and firing, but instead includes actions that might dissuade a reasonable worker from protected activity. *See Garvin v. Sw. Corr., L.L.C.*, 391 F. Supp. 3d 640, 653 (N.D. Tex. 2019).

The Court concludes that Teague has sufficiently alleged that Williamson County took an adverse employment action against her when it made false statements about her employment history to Flores and leaked her private victim information because these actions would likely "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 57. Williamson County's misrepresentations functioned, essentially, as a negative employment reference to Teague's prospective employer, which courts have recognized as an adverse employment action in postemployment retaliation cases. *See, e.g.*, *Robinson v. Shell Oil Co.*, 519 U.S. 337, 339, 117 S. Ct. 843, 845 (1997) (causal nexus between plaintiff's filing of EEOC charge and former employer's negative reference to prospective employer); *Allen v. Texas Dep't of Transp.*, 186 F. App'x 501, 503 (5th Cir. 2006) (assessing the relevant causal nexus as between the filing of an EEOC charge and a negative employment reference); *Levitz v. Alicia's Mexican Grille, Inc.*, No. CV H-19-3929, 2020 WL 710013, at *3 (S.D. Tex. Feb. 11, 2020) ("[A] negative reference may constitute an adverse employment action."); *accord Wade v. Knoxville*

*Utilities Bd.*, 259 F.3d 452, 464 (6th Cir. 2001) (concluding no causal connection linked plaintiff's

prior EEOC charge and former employer's negative reference to prospective employer).

c. Causal Connection

Having concluded that Teague has plausibly alleged an adverse employment action, the

Court must now determine whether Teague has plausibly alleged a causal connection linking her

protected activity and the allegedly false and private information Williamson County shared with

Travis County. At the pleading stage, "evidence for a causal connection includes: temporal

proximity between a protected act and adverse employment action; an employment record that

does not support the adverse action; and an employer's departure from typical policies and

procedures." *Garvin v*, 391 F. Supp. 3d at 653.

As evidence of retaliatory animus, Teague pleads facts to suggest a discrepancy between

her employment record and the representations Williamson County made to Flores about her

employment history. (Am. Compl., Dkt. 21, at 10). For example, Teague alleges Williamson

County falsely reported to Flores that she had been "counseled for tasing a handcuffed subject,"

that she was "removed from duty" after she "failed to pass three separate mental fitness for duty

evaluations," that she was "insubordinate," and that her "peace officer status was revoked or

removed." (*Id.* at 10–11). Teague contends these statements are false because her Williamson

County employment file contains no disciplinary history[14] and her peace officer status was never

revoked. (*Id.*). Moreover, Teague notes that she did not resign; Williamson County honorably

discharged her. (*Id.* at 11). And while Teague concedes that she failed two mental fitness

evaluations, she passed the third and was never removed from duty. (*Id.* at 10). Instead,

Williamson County placed her "on light duty" after she failed her first evaluation and "on

administrative leave" after she failed her second evaluation. (*Id.*).

---

[14] Teague concedes that reports of insubordination are mentioned "in psychological evaluations
conducted at [Williamson County] after Deputy Silguero abused [her]," but contends that Williamson
County never disciplined her for insubordination. (Am. Compl., Dkt. 21, at 16).

As further evidence of retaliatory animus, Teague alleges Williamson County departed from standard protocol when it provided Flores with a copy of Dr. Miller's L-3 psychological evaluation, which contained private victim information related to her harassment by Silguero. (Am. Compl., Dkt. 21, at 12). According to Teague, Flores's report notes that Dr. Miller's L-3 report was "held in IA [internal affairs] because the sheriff did not want that issue to be a part of her personnel file," which Teague contends is consistent with standard practice: "[i]f an officer is determined to be a victim, then information relating to her victimhood is removed from her personnel file." (Pl.'s Resp., Dkt. 34, at 9). Nevertheless, Williamson County gave Flores a copy of Dr. Miller's L-3 report during Teague's background check. (Am. Compl., Dkt. 21, at 12). Teague further alleges that Sergeant Wilco from Williamson County's Internal Affairs Department discussed the incident with Silguero "in some detail" with Flores. (*Id.*).

Williamson County argues that Teague's amended complaint does not identify which Williamson County employees made the alleged false and misleading statements about her employment history and fails to allege how these statements were related to any protected activity. (Williamson County Mot. Dismiss, Dkt. 29, at 6). Accordingly, Williamson County contends Teague has not alleged with the requisite specificity that these actions were motivated by retaliatory animus. (*Id.*). Moreover, while Williamson County concedes that courts have allowed claims for retaliation against former employers for postemployment adverse employment actions, here it contends "the remoteness in time between the allegedly protected activities and the alleged action by [Williamson County] differentiates those cases." (*Id.*).

To start, the Court notes that Williamson County's arguments assume the relevant causal nexus here to be between Teague's protected activity and Travis County and Giddings's decision not to hire her. (*See id.* at 7 ("[T]he time gap between any alleged protected activity she engaged in during her time at [Williamson County] and any adverse employment action by TCCO [Travis County] and GPD [Giddings] is over three (3) years")). But Teague alleges Williamson County took its own adverse employment action against her when it provided Flores with a false and

negative employment reference.[15] The relevant causal nexus, then, is between the protected activity and the employment reference Williamson County provided to Travis County.

Nevertheless, Williamson County is right that Teague cannot rely *solely* on the temporal proximity between the protected activity and the adverse employment action to establish causation here. (*Id.*). Under either theory of causation, the "time gap is too great." (*Id.*). Teague participated in an internal affairs investigation into Silguero's conduct in November 2012 and filed a sexual harassment complaint against Deputy Alafa in July 2013. (Am. Compl., Dkt. 21, at 5, 7). She did not apply to work for Travis County until February 2017. (*Id.* at 9). Absent other facts tending to show causation, "plaintiffs may rely solely on temporal proximity between protected activity and an adverse employment action only if the two are very close." *Zamora v. City of Houston*, 798 F.3d 326, 335 (5th Cir. 2015) (citing *Clark Cty. Sch. Dist.*, 532 U.S. at 273–74). Absent other evidence of retaliation, this significant time gap is insufficient to support an inference of causation. *See Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007) (finding that a two year separation between participation in a protected activity and an alleged adverse employment action insufficient to support an inference of causation); *see also Clark County School Dist.,* 532 U.S. at 273–74 (noting that while a three-month or four-month period may be close enough in time to support an inference of causation, twenty months was too long).

But as Teague notes, she "does not rely on temporal proximity alone" to show retaliation. (Pl.'s Resp., Dkt. 34, at 9).[16] She alleges Williamson County did not accurately represent her disciplinary history to Flores during her background check by pointing to inconsistencies in her personnel file and the statements Williamson County made to Flores. (Am. Compl., Dkt. 21, at 10–11). She also alleges Williamson County departed from standard protocol

---

[15] *See supra* Part III.C.1. (discussing Teague's dual theory of causation).

[16] The Court notes that Teague's response only defends her second theory of causation—in which Travis County and Giddings's decision not to hire her serves as the relevant adverse employment action. (Pl.'s Resp., Dkt. 34, at 9–10).

when it provided Flores with an L-3 evaluation detailing her allegations of sexual harassment against Silguero. (*Id.* at 12).

Williamson County may very well have had a nonretaliatory reason for misrepresenting Teague's disciplinary history and releasing her private health information to Flores. But at this stage, Teague must only allege sufficient facts to "nudge [her retaliation claims] across the line from conceivable to plausible." *Cicalese*, 924 F.3d at 768 (quoting *Twombly*, 550 U.S. at 547). Teague has plausibly pleaded facts to show that her employment record did not warrant the statements Williamson County made to Flores about her disciplinary history and that Williamson County departed from typical procedure in leaking her private victim information. *See Garvin*, 391 F. Supp. 3d 640 at 653 (noting that evidence of causation at the pleading stage may include, among other things, "an employment record that does not support the adverse action; and an employer's departure from typical policies and procedures."). Though a close call, these allegations allow the Court "to draw the reasonable inference" that Williamson County's actions were motivated by retaliatory animus. *Raj v. Louisiana State Univ.*, 714 F.3d 322, 330 (5th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 686); *see also Garvin*, 391 F. Supp. 3d at 653 (noting the five months separating the protected activity and the adverse employment action was "too long of a gap" to support an inference of causation, but finding plaintiff's allegations that his employer had "failed to follow its usual policies in reassigning him" and that "his employment record did not warrant such actions" sufficient to show a causal connection at the motion to dismiss stage). Accordingly, the Court will deny Williamson County's motion to dismiss Teague's retaliation claims.

## 2. Travis County

Teague also brings federal and state retaliation claims against Travis County.[17] Teague contends Travis County did not hire her because she participated in two internal affairs

---

[17] Because "the substantive law governing Title VII and TCHRA retaliation claims is identical," the analysis that follows applies to both claims. *Gorman*, 753 F.3d at 170.

investigations while employed by Williamson County, a fact Travis County learned when it

conducted Teague's background check. (Am. Compl., Dkt. 21, at 18). To show that Travis

County acted out of retaliatory animus, Teague alleges Travis County failed to verify the allegedly

false statements made by Williamson County during her background check, interjected (through

Flores) its own false and misleading facts about Teague into her background report,

mischaracterized Teague as "deceptive," and failed to order a new L-3 psychological evaluation

during the application process. (Pl.s' Resp., Dkt. 34, at 14, 17). Even taking all of these

allegations as true, the Court finds they are insufficient to plausibly allege causation; that is, these

facts do not allow the Court to reasonably infer that Travis County did not hire Teague because

she participated in protected activity.

### A. False Information from Williamson County

Teague first alleges that Travis County failed to investigate the veracity of Williamson

County's statements about her employment history and that "her facts, if accepted as true, show

more than mere negligence, but an intentional act of retaliation." (Pl.'s Resp., Dkt. 34, at 12–13).

Specifically, Teague alleges that Travis County "should have noted that Teague's employment file

with Williamson County did not contain any discipline," and contends that, contrary to

Williamson County's representations, she "was not removed from duty at any time during her

employment." (Pl.'s Resp., Dkt. 34, at 14–15). Teague additionally alleges that Travis County

could have "easily verified with Texas Commission on Law Enforcement" whether "Teague's

peace officer status was revoked or removed." (*Id.* at 15).

As Travis County rightly notes, in alleging that Travis County did not hire her because it

improperly relied on Williamson County's false and misleading statements about her disciplinary

history, Teague concedes causation. (Travis County Mot. Dismiss, Dkt. 30, at 9). According to

Teague, Travis County did not hire her because it relied on misrepresentations from Williamson

County, not because she made sexual harassment allegations against Silguero and Alafa. (Am.

Compl., Dkt. 21, at 17 ("These false and misleading statements became a permanent part of

Officer Teague's record with [Travis County], and directly resulted in her non-selection for the position of Deputy Constable."). Moreover, she does not plead facts to imbue this reliance with retaliatory animus. For instance, she does not allege Travis County routinely verified statements made during reference checks, so as to make its failure to do so in her case noteworthy. *See Garvin*, 391 F. Supp. 3d at 653 (noting that an employer's "departure from typical policies and procedures" may serve as evidence of causation). Allegations about what Travis County "should have done" absent facts tending to show its chosen course deviated from typical procedure are insufficient to establish retaliatory animus. (*See* Pl.'s Resp., Dkt. 34, at 14 ("Travis County should have noted that Teague's employment file with Williamson County did not contain any discipline."); *id.* ("Travis County should have treated the material as suspect.")).

Indeed, the prudent course might have been for Flores to verify Williamson County's representations about Teague's disciplinary history, especially if—as Teague contends—Williamson County's statements were "easily verifiable." (*Id.* at 14–16). But "[e]mployment discrimination laws are 'not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . to transform the courts into personnel managers.'" *Bryant*, 413 F.3d at 478 (quoting *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir.1988)). The only inquiry that matters is whether Travis County's failure to verify Williamson County's statements tends to show it failed to hire her because of her protected activity. Teague pleads no facts to allow for such an inference.

### b. Interjection of New False and Misleading Facts

As additional evidence that Travis County retaliated against her, Teague alleges Flores "interjected new false and misleading facts that were independent from Williamson County" into his report. (Am. Comp., Dkt. 21, at 11). For example, Flores's report "indicated that Teague was deceptive" because she failed "to disclose her involvement with Internal Affairs" while employed at Williamson County and failed to disclose two Class C misdemeanors, one for speeding in January 2016 and the other for an undisclosed reason in April 2007. (*Id.* at 11–12). According to

Teague, Flores's conclusions are baseless and therefore serve as evidence of retaliatory intent. (Pl.'s Resp., Dkt. 34, at 16–17). Teague explains that she did not volunteer information about her involvement with internal affairs because there was "no responsive question" prompting such a disclosure. (Am. Compl., Dkt. 21, at 11). And regardless, Teague notes she *did* disclose that her Williamson County field training officers sexually harassed her. (*Id.*). Moreover, she disclosed her speeding misdemeanor in the personal history section of her application and decided not to mention her older misdemeanor conviction because the personal history section only required her "to list traffic citations in the past seven years." (*Id.* at 11–12).

But facts assailing Travis County's imperfect conclusions are insufficient to establish retaliatory motive. Indeed, these facts tend to show Travis County failed to hire Teague because of Flores's failure to thoroughly review her application, infirmities with the application questionnaire, or both, which caused Flores to conclude—however wrongly—that Teague failed to disclose her misdemeanor convictions or the extent of her involvement with internal affairs. (Am. Compl., Dkt. 21, at 11–12). Flores's imperfect conclusions, at most, show that he failed to give Teague's application a thorough review. They do not reveal retaliatory motive.

### c. L-3 Evaluation

Teague also alleges Travis County's decision not to order a new L-3 evaluation shows an underlying retaliatory motive. According to Teague, Flores initially determined that she needed a new L-3 evaluation after reviewing Miller's outdated L-3. (Am. Compl., Dkt. 21, at 12). During the application process, Teague provided Flores with a copy of an L-3 evaluation conducted by Dr. Kim, which Teague contends "was newer than the Miller L-3 and showed improvement in [her] mental health." (*Id.*). But "after being made aware of the above-mentioned actions by Teague and prior performance for duty evaluations," Flores decided not to order a new L-3 evaluation. (*Id.* at 13). In failing to obtain a new L-3, Teague contends Travis County "predetermined that [she] was mentally unfit," a determination that a newer L-3 evaluation may have disputed. (Pl.'s Resp., Dkt. 34, at 18). Instead of "relying on an old 2013 L-3 examination

from Dr. Miller or any of the other doctors who performed the other two L-3s," Teague

contends Flores should have requested a new L-3 evaluation and that his decision not to do so

"is additional evidence of retaliation." (Am. Compl., Dkt. 34, at 18; Pl.'s Resp., Dkt. 34, at 18).

Travis County's decision not to order a new L-3 evaluation does not sufficiently show a

causal connection between its decision not to hire Teague and her participation in protected

activity. While an employer's departure from typical policies and procedures may serve as

evidence of causation in a retaliation case, Teague alleges no facts pertaining to Travis County's

L-3 procedure. *Garvin*, 391 F. Supp. 3d at 653. And while Teague contends Travis County

violated Texas law by not ordering a new L-3 evaluation because "more than 180 days [had]

passed since [Teague's] last appointment," Texas law only requires a law enforcement agency to

"obtain a new declaration of psychological and emotional health (L3 Form)" before it "appoints"

that person as a peace officer. 37 Tex. Admin. Code § 217.7(a)(9)(A)(i). It does not require law

enforcement agencies to order new L-3 evaluations for every applicant, regardless of their

qualifications or their failure to meet other hiring criteria. *See id.* Accordingly, this factual

allegation also fails to show Travis County declined to hire Teague because she participated in

protected activity.

### d. "Code of Silence"[18]

Finally, Teague alleges that a "code of silence" among law enforcement officers, which

Teague contends "was recently recognized by the Fifth Circuit as a viable method of proof in the

law enforcement community," establishes the requisite causal nexus here. (Am. Compl., Dkt. 21,

at 19; Pl.'s Resp., Dkt. 34, at (citing *Zamora*, 798 F.3d at 333; *Sharp v. City of Houston*, 164 F.3d 923,

935 (5th Cir. 1999)). Specifically, she alleges that the "social ostracism that was apparent in her

---

[18] Teague martials her "code of silence" theory of causation against all three Defendants. (Am. Compl., Dkt. 21, at 19 ("Causation can be shown in this case between the protected activity and the adverse employment action . . . due to the existence of the 'code of silence.'"); Pl.'s Resp., Dkt. 34, at 21). The Court did not reach this theory in assessing the sufficiency of Teague's retaliation claim against Williamson County because she had plausibly alleged other facts tending to establish a causal nexus. *See supra* Part III.C.1.

termination with Williamson County, after reporting the harassment by her two FTO supervisors, carried forward (after she was terminated) to her attempts to obtain employment with Travis County and Giddings." (Pl.'s Resp., Dkt. 34, at 22). According to Teague, the "code of silence" "provides the motivation for the reasons behind why [Travis County and Giddings] made additional misrepresentations and otherwise failed to conduct an adequate investigation by merely accepting what Williamson County said was true." (Pl.'s Resp., Dkt. 34, at 22–23).

While the Fifth Circuit has recognized that a "code of silence" among law enforcement officers can serve as evidence of retaliation, Teague has failed to plead facts to show a code of silence at work here, distinguishing this case from those she cites. *See Zamora*, 798 F.3d at 333; *Sharp*, 164 F.3d at 935. For example, in *Zamora*, the plaintiff presented evidence that the police department operated under a "code of silence in which officers would retaliate against those who complained, spoke out against others, or filed complaints or lawsuits." 798 F.3d at 333. In light of this code of silence, the plaintiff contended that his supervisors' awareness of his protected activity was "particularly likely to cause retaliatory animus." *Id.* The Fifth Circuit then concluded that a jury could reasonably infer that plaintiff's supervisors "operating under this 'code of silence,' retaliated against [the plaintiff], who they were well aware had engaged in protected activity." *Id.*

Here, Teague cannot rely on an alleged code of silence to show retaliatory animus because—aside from stating that a code of silence existed within Travis County—she pleads no facts to substantiate this conclusory allegation. (Am. Compl., Dkt. 21, at 19). She does not, for example, plead facts to suggest that Travis County officers routinely retaliated against those who complained, spoke out, or filed complaints or lawsuits. *See Zamora*, 798 F.3d at 333; *see also Sharp*, 164 F.3d at 935 (noting plaintiff's "ample evidence" of a code of silence). And aside from concluding that the "social ostracism" she endured in Williamson County "carried forward" to the application process with Travis County and Giddings, a factual allegation she makes for the first time in her response, Teague pleads no facts to show that a "code of silence" pervaded

Travis County's officer culture or how that code of silence impacted the hiring process. *Dorsey*, 540 F.3d at 337 ("Because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint"); *id.* ("To avoid a dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations."). Thus, Teague's failure to plead facts tending to show the existence of a code of silence among Travis County officers forecloses her ability to survive a motion to dismiss on this permutation of causation as well.

Because Teague has failed to plead facts to show Travis County did not hire her because of her protected status, Teague has not stated a claim for retaliation against Travis County. The Court will grant Travis County's motion to dismiss Teague's retaliation claims.

### 3. City of Giddings

Teague also brings federal and state-law retaliation claims against Giddings, alleging that Giddings withdrew its provisional offer of employment after learning that she filed sexual harassment claims against Silguero and Alafa while employed by Williamson County. (Am. Compl., Dkt. 21, at 17). In support of these claims, Teague makes many of the same factual allegations she martialed against Travis County, including that Giddings improperly relied on Williamson County's alleged false statements about her disciplinary history; failed to thoroughly investigate Teague's entire employment file; and declined to order a new L-3 evaluation, which "would have resolved all issues about her ability to perform the essential functions of her job in her favor." (Am. Compl., Dkt. 21, at 14–17; Pl.'s Resp., Dkt. 34, at 18–21).

Again, though, Teague's allegations that Giddings did not perform a robust background investigation do not enable the Court to reasonably infer that Giddings withdrew Teague's provisional employment offer because she filed sexual harassment claims against Silguero and Alafa. Indeed, her factual allegations compel a different inference: that Giddings withdrew its employment offer because her employment record indicated she had "a pattern of instability, insubordination and deception and was unable to . . . successfully complete her job duties." (Am.

Compl., Dkt. 21, at 16); *see also id* (alleging that "[Williamson County's] false and misleading statements became a permanent part of Officer Teague's record . . . and directly resulted in . . . the withdrawal of her provisional offer of employment at [Giddings]."). Giddings may have reached these conclusions based on false and misleading statements provided by Williamson County, and a more thorough investigation into Teague's background may indeed have negated these findings. But in making hiring decisions, Giddings "does not have to make proper decisions, only non-discriminatory ones," and Teague has not pleaded facts to show retaliatory animus motivated Giddings's decision to withdraw her employment offer. *Bryant*, 413 F.3d at 478. Accordingly, Teague has not stated a claim for retaliation against Giddings, and the Court will grant Giddings's motion to dismiss Teague's federal and state-law retaliation claims.

## IV. TEAGUE'S MOTIONS FOR LEAVE TO AMEND

Four months after Defendants filed their motions to dismiss her amended complaint, Teague filed her partially opposed first supplemental motion to amend, (Dkt. 57), and her partially opposed motion for leave to file a partially opposed first supplemental motion to amend, (Dkt. 58). Essentially, these two motions seek leave to add factual allegations related to another background report compiled by Sergeant James Shelton ("Shelton") from the Texas Juvenile Justice Department ("TJJD"), where Teague ultimately obtained employment. (Mot. Leave, Dkt. 57, at 1). Specifically, Teague seeks to add allegations that Shelton's report for the TJJD found that Teague was "honorably discharged" from Williamson County and had no internal affairs report or write-ups. (*Id.* at 2). Shelton's report also notes a discrepancy between the statements Williamson County made to Flores and the information Williamson County provided to him. (*Id.*) Finally, Shelton's report concludes that "the preponderance of the evidence in this situation shows [Teague's] termination or resignation from Williamson County should not in itself be considered a negative factor in her application." (*Id.* at 2–3). Teague contends these additional factual allegations show "that Williamson County's statements to Travis and Giddings were false" and that that Travis County and Giddings should have

"properly rejected and not expanded upon" the false information provided by Williamson

County in compiling their background reports. (*Id.* at 2). Moreover, Teague contends these facts

illustrate that "[i]n contrast to the sham investigations conducted by Travis County and the City

of Giddings, the Texas Juvenile Justice Department conducted a proper investigation

unmotivated by discriminatory animus." (*Id.* at 2).

The Federal Rules of Civil Procedure permit a party to amend its pleading "once as a

matter of course," but afterwards "only with the opposing party's written consent or the court's

leave." Fed. R. Civ. P. 15(a)(1)–(2). "The court should freely give leave when justice so requires."

*Id.* at (a)(2). Rule 15(a) "requires the trial court to grant leave to amend freely, and the language

of this rule evinces a bias in favor of granting leave to amend." *Lyn–Lea Travel Corp. v. Am.*

*Airlines*, 283 F.3d 282, 286 (5th Cir. 2002). But leave to amend "is by no means automatic." *Davis*

*v. United States*, 961 F.2d 53, 57 (5th Cir. 1991). A district court may deny leave to amend if it has

a "substantial reason" to do so. *Lyn–Lea Travel Corp.*, 283 F.3d at 286. The futility of amendment

is one such substantial reason to deny leave to amend. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d

863, 872–73 (5th Cir. 2000). A proposed amendment is futile if it fails to state a claim upon

which relief could be granted. *Id.* at 873. Therefore, in determining futility, the Court will apply

the "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.*

The Court finds that these additional allegations would not cure the defects identified in

Teague's amended complaint, rendering further amendment futile.[19] While the findings in

Shelton's report indicate that the TJJD may have conducted a more thorough review of Teague's

employment history and reached a different conclusion as to her qualifications as a result, this

does not show Travis County or Giddings's hiring decisions were motivated by discriminatory or

---

[19] The Court further notes that Teague did not attach a copy of her proposed second amended complaint to her motion for leave, as the Local Rules require. W.D. Tex. Loc. R. CV-7(b). (*See* Dkt. 57, 58). If her proposed second amended complaint included additional factual allegations not discussed here, they were not before the Court.

retaliatory animus.[20] To the extent Teague believes these additional allegations provide support for Teague's retaliation claim against Williamson County, the Court has already determined Teague has sufficiently stated a claim for retaliation against Williamson County to survive a motion to dismiss. Thus, the Court will deny Teague leave to amend her complaint.

## V. CONCLUSION

For the reasons discussed, **IT IS ORDERED** that Travis County and Giddings's motions to dismiss, (Dkt. 28, 30), are **GRANTED**.

**IT IS FURTHER ORDERED** that Williamson County's motion to dismiss, (Dkt. 29), is **GRANTED IN PART AND DENIED IN PART**. The motion is granted only as to Teague's sex and disability discrimination claims. Teague's retaliation claims against Williamson County remain.

**IT IS FINALLY ORDERED** that Teague's two motions for leave to amend, (Dkt. 57, 58), are **DENIED**.

**SIGNED** on May 19, 2020.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[20] Shelton's report also cannot save Teague's sex and disability claims against Williamson County because, as explained previously, those claims are time-barred. *See supra* Part III.A.1.